**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P:(410) 962-4953 — F:(410) 962-2985**

October 28, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Clever v. Commissioner of the Social Security Administration*
Civil No. 8:25-cv-03732-JMC

Dear Counsel:

Frank E. Clever ("Plaintiff") petitioned this Court on November 13, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 18, 20, 21). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the case for the reasons explained below.

## I. Procedural Background

On July 18, 2022, Plaintiff filed a Title II application for a period of disability and disability benefits, alleging disability beginning November 15, 2020. (Tr. 164-170).[1] The SSA initially denied Plaintiff's application on February 16, 2023, and upon reconsideration on June 18, 2024. (Tr. 82-86, 87-91). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge. ("ALJ"). (Tr. 92-93). On June 17, 2025, ALJ John Kooser conducted a telephone hearing where Plaintiff appeared and testified with counsel. (Tr. 34-65). ALJ Kooser subsequently determined that Plaintiff has not been under a disability, from November 15, 2020, through the date of his decision on June 24, 2025. (Tr. 16-32). Thereafter, Plaintiff requested that the Appeals Council review the decision of the ALJ. (Tr. 159-160). On September 25, 2025, the Appeals Counsel denied review, rendering the ALJ's decision the final decision of the SSA. (Tr. 3-15).

## II. The ALJ's Decision

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 12) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one, the ALJ found that Plaintiff had not engaged in substantial activity since November 15, 2020, the alleged onset date. (Tr. 21).

At step two, the ALJ determined that Plaintiff has the following severe impairments: "carpal tunnel syndrome, osteoarthritis, impulse control disorder, and depression," which limit his ability to perform basis work activities as required by SSR 85-28. *Id*.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). *Id*. In assessing Plaintiff's step-three impairments, the ALJ reasoned:

> The claimant's impairments, considered both singly and in combination, do not meet or medically equal the requirements of any of the impairments set forth in Section 1.18 of Appendix 1, dealing with the musculoskeletal system, or Sections 12.04 or 12.08 of Appendix 1, dealing with mental impairments.

*Id*. at 22. Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c); the claimant is limited to tasks requiring no more than frequent bilateral manual dexterity; the claimant is limited to no more than occasional interaction with supervisors, coworkers, and members of the general public.

*Id*. at 23. The ALJ reasoned:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with other substantial evidence of record. To begin, the documentary record reflects no history of psychiatric hospitalization. The claimant's psychiatric treatment records appear to indicate a total of approximately 15 appointments over a nearly 6 year timeframe. (Exhibits 2F/, 13F, 14F). Furthermore, the claimant psychiatric treatment records for the past three years indicate that the claimant is doing well with stable moods and decreased stress. (Exhibit 13F/3, 5, 8, 9, 14F/2, 3). The claimant's treatment appears to have been fairly conservative, limited principally to psychotropic medication. (Exhibit 13F/3, 5, 8, 9, 14F/2, 3). Despite the claimant's diagnoses and reported lifelong difficulties, he was able to sustain employment for 15 years. (Exhibit 1E/1). Despite the claimant's disciplinary issues, his ability to sustain employment for a prolonged period despite his impairment suggests that the impairment is not disabling.
>
> With regard to the claimant's alleged physical impairments, the documentary record confirms the claimant's diagnosis with carpal tunnel syndrome on the right as well as similar symptoms on the left. (Exhibit 10F/1-6). Treatment notes dated May 10, 2022, note a well-healed wound on the claimant's right wrist, which is consistent with his testimony regarding carpal tunnel release surgery. (Exhibit 10F/5). Upon examination, the claimant exhibited a full range of motion in the right wrist as well as undiminished sensation in all fingers, negative to Nell's sign, and negative direct compression test. (Exhibit 10F/5). Treatment notes dated January 10, 2024 indicated diagnosis of left hand pain, possibly due to gout. (Exhibit 10F/1-2). Upon examination, the claimant was able to make a full fist, and exhibited full finger flexion and extension with no significant tenderness to palpation. (Exhibit 10F/2). Tinel's test and a direct compression test were both negative. (Exhibit 10F/2).

*Id*. at 25. At step four, the ALJ found that Plaintiff could perform past relevant work as a maintenance electrician (DOT #829.261-018), highly skilled work (SVP 8), medium exertion. *Id*. at 26. The ALJ noted that Plaintiff's past work does not "require the performance of work-related activities precluded" by his residual functional capacity. *Id*.

Finally, given Plaintiff's age, education, work experience, and RFC, the ALJ determined that since November 15, 2025, Plaintiff could make "a successful adjustment to work that existed in significant numbers in the national economy." *Id*. at 27. The ALJ determined that Plaintiff could perform the following jobs: (1) a Laborer, Stores (DOT #922.687-058), unskilled (SVP 2), medium exertion, 162, 000 jobs nationally; (2) an Automobile Dealer (DOT #915.687-034), unskilled (SVP

2), medium exertion, 36,000 jobs nationally; and a (3) Packer, Agricultural Produce (DOT #920.687-134), unskilled (SVP 2), medium exertion, 13,000 jobs nationally. *Id*. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, from November 15, 2022, through the date of his decision. *Id*.

## III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV. Analysis

Plaintiff argues on appeal that the ALJ's conclusions are not supported by substantial evidence because the ALJ used his own lay medical opinion to interpret raw medical data and failed to build a logical bridge between the evidence and the RFC. (ECF No. 18 at 3). Specifically, Plaintiff faults the ALJ for failing to order a consultative examination regarding Plaintiff's mental functional capacity and neglecting to recontact Dr. Sisom Osai, M.D., for clarification. *Id*. at 8, 9.

For the reasons that follow, the ALJ's RFC determination is supported by substantial evidence. As such, I will affirm the case.

### A. The ALJ's RFC Determination Must be Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has

rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

B. <u>The ALJ Did Not Err by Failing to Order a Consultative Examination</u>

Plaintiff argues that this Court should remand because the record and the ALJ's subsequent residual function capacity ("RFC") assessment lack substantial evidence. Plaintiff insists that the ALJ should have ordered a consultative examination to obtain "additional information regarding Plaintiff's ability to perform work-like functions." (ECF No. 18 at 8). Plaintiff claims that there is a lack of "sufficient medical opinion evidence" contained within the record, which led the ALJ to improperly craft the mental RFC based on his own lay opinion. *Id*. at 6. "An ALJ is not required to obtain an expert medical opinion as to a claimant's RFC and may properly base RFC findings on a claimant's 'subjective complaints, the objective medical evidence, and the opinions of treating, examining, and non-examining physicians." *Felton-Miller v. Astrue*, 459 F. Appx. 226, 230-31 (4th Cir. 2011). However, an ALJ, "as a layperson is generally not qualified to assess a claimant's RFC on the basis of bare medical findings . . .." *Tiffany D. v. Commissioner of Social Security*, 2021 WL 363790, at *4 (W.D.N.Y. Feb. 3, 2021); *Derrick W. v. Kijakazi*, No. 5:20-cv-00055, 2022 WL 488067 (W.D. Va. Feb. 17, 2022) (""[A]s long as the ALJ does "not *substitute* his [or her] own lay opinion for a medical expert's [opinion] when evaluating the significance of clinical findings," *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 108 (4th Cir. 2020) (emphasis added), the ALJ is free to craft an RFC based on all the relevant evidence in the record, *Felton-Miller*, 459 F. App'x at 230–31)"). Therefore, Plaintiff insists that the ALJ had a duty to supplement the record.

Plaintiff cites to 20 C.F.R. §404.1519a which states:

> If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination. *See* § 404.1512 for the procedures we will follow to obtain evidence from your medical sources and § 404.1520b for how we consider evidence. Before purchasing a consultative examination, we will consider not only existing medical reports, but also the disability interview form containing your allegations as well as other pertinent evidence in your file.
>
> (b) *Situations that may require a consultative examination.* We may purchase a consultative examination to try to resolve an inconsistency in the evidence*, or when the evidence as a whole is insufficient to allow us to make a determination or*

*decision on your claim*. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:

(1) *The additional evidence needed is not contained in the records of your medical sources*;

(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

(emphasis added).

"The ALJ has a duty to develop the claimant's complete medical history, including "arranging for [] consultative examinations if necessary."" *Cindy F. v. Berryhill*, No. 7:18-cv-253, 2019 WL 2150382 at *4 (W.D. Va. May 16, 2019) (quoting 20 C.F.R. § 416.945(a)(3)). The decision to order a consultative examination is "generally left to the ALJ's discretion." *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003). "However, the ALJ has a duty to order a consultative examination when the record lacks sufficient evidence to permit the ALJ to reach an informed disability determination." *Taylor M., Claimant, v. Frank Bisignano*, Commissioner of Social Security, Respondent., No. 2:25-cv-342, 2026 WL 2430849 at *4 (E.D. Va. Aug. 19, 2026) (citation omitted); 20 C.F.R. § 416.945(a)(3) (The ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a consultative examination(s) if necessary."); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted) (The ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate."); 20 C.F.R. § 404.1519a(a) ("If [the ALJ] cannot get the information [they] need from [the claimant's medical sources], [the ALJ] may decide to purchase a consultative examination."); 20 C.F.R. § 404.1519a(b) (The ALJ may arrange for a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination.").

Thus, the question before this Court is whether the record contained sufficient medical evidence for the ALJ to make an informed decision, without the need for a consultative examination. *See Craft v, Apfel*, No. 97-2551, 1998 WL 702296 at *3 (W.D. Va. Oct. 6, 1998).

Based on the record, the Court concludes that the ALJ had sufficient medical evidence before him to make an informed decision about Plaintiff's psychological limitations. The record contains Plaintiff's testimony, findings from the state agency medical and psychological consultant, and other treatment records.

First, in January 2023, state agency psychological consultant Hilary Lake, M.D., initially reviewed Plaintiff's claim, concluding that Plaintiff had interpersonal problems at work in the past, but his current records did not support more than mild functional limitations from his mental health disorder. (Tr. 70). On reconsideration, in June 2024, state agency psychological consultant J. Smith, found the evidence to be consistent with the prior administrative decision. (Tr. 79). He concluded that Plaintiff's "ADLs are functional" and that he socializes, drives, runs errands, and completes chores. *Id*.

Taking those findings into account, the ALJ concluded that Plaintiff's alleged anger and explosive issues were non-severe. (Tr. 22). The ALJ noted that Plaintiff did not have a "history of psychiatric hospitalization and no history of involvement with law enforcement." *Id*. He further noted that Plaintiff's treatment notes indicated that he "exhibited a euthymic mood with appropriate affect." *Id*. at 23. Lastly, the ALJ opined that, based upon the evidence, Plaintiff's alleged mental impairment failed to significantly limit his concentration, persistence and pace, and ability to interact with others and conduct daily activities. *Id*.

Next, the ALJ determined that Plaintiff retained the RFC to perform medium work with limitations: "the claimant is limited to tasks requiring no more than frequent bilateral manual dexterity; the claimant is limited to no more than occasional interaction with supervisors, coworkers, and members of the general public." *Id*. The ALJ found that Plaintiff attended "a total of approximately 15 appointments over a nearly 6 year timeframe." *Id*. at 25. He noted that Plaintiff's treatment records state that he has been "doing well with stable moods and decreased stress." *Id*.; *see* (Tr. 337-348). The ALJ reasoned that Plaintiff's treatment "appears to have been fairly conservative, limited principally to psychotropic medication," such as Zoloft. *Id*. at 24, 25. To conclude, the ALJ opined that despite Plaintiff's diagnoses and reported lifelong difficulties with interpersonal interaction, he was able to sustain employment for 15 years and was never fired due to his impairments. *Id.* at 25; *see* (Tr. 51-52, 204-210).

Lastly, the ALJ also considered Plaintiff's testimony. Plaintiff mentioned that he has a "history of difficulty interacting with others" resulting in mandatory counseling, anger management classes, and an unpaid suspension. *Id*. at 24. Nothwithstanding, Plaintiff also testified that since 2020 he has only had two outbursts, has maintained a small circle of friends, and took his wife on vacation to Italy. *Id*. at 25. The ALJ took this into account to support his finding that with limitations Plaintiff retained the capacity to withstand at least to some degree interpersonal interactions.

Although the record is not teeming with medical evidence on the subject of Plaintiff's mental impairments, the ALJ did not "substitute [his] views on the severity of [Plaintiff's] psychiatric problems for that of a trained professional." *Gregory v. Saul*, No. 3:19CV084 (REP), 2019 WL 5280968, at *9 (E.D. Va. Sept. 3, 2019) (quoting *Kersey v. Astrue*, 614 F. Supp. 2d 679, 695 (W.D. Va. 2009) (holding that the ALJ erred by failing to order consultative examination, when the record lacked *any* opinions assessing plaintiff's condition and no psychiatric or psychological evidence supported the ALJ's decision) (emphasis added). The ALJ considered the entire record and "proceeded to craft an RFC that accounted for all of Plaintiff's mental impairments." *Id*. Specifically, the ALJ accounted for his moderate limitation in interacting with others and mild

limitation in adapting and managing himself, limiting Plaintiff to no more than occasional interaction with supervisors, coworkers, and members of the general public. (Tr. 22-23). Since the record contains "consistent and sufficient-albeit limited- evidence upon which the ALJ could assess Plaintiff's claim, the ALJ did not err by failing to order a consultative examination." *Gregory,* 2019 WL 5280968, at *9.

C. The ALJ Did Not Err by Failing to Recontact Dr. Osai

Plaintiff argues that the ALJ should have recontacted Dr. Osai, who performed a consultative internal medical examination in February 2023. (Tr. 436). Plaintiff insists that portions of Dr. Osai's summary appear to be an opinion on Plaintiff's issues with "work-related activities such as walking, standing" as he "developed shortness of breath with or without exertion." *Id*. at 438. Also, Plaintiff notes that "grip strength was reduced to 4/5 on both sides" and that Dr. Osai indicated that he has "constant pain in his hands." *Id*. at 444, 438. Plaintiff explains that while the "procedural rules were modified to eliminate the requirement that the Commissioner recontact a Claimant's medical source when an insufficiency or inconsistency first appears," the Commissioner stated the following:

> Although we propose to eliminate the requirement that we recontact your medical source(s) first when we need to resolve an inconsistency or insufficiency in the evidence he or she provided, **we expect that our adjudicators would continue to recontact your medical source(s) when we believe such recontact is the most effective and efficient way to resolve an inconsistency or insufficiency**. For example, if we have a report from one of your medical sources that contains a functional assessment of your physical capacity for work, but no clinical or objective findings in support, **we expect that the adjudicator would first contact that source to find out the reasons for his or her assessment**. Similarly, when the medical evidence we receive from one of your medical sources contains an internal inconsistency about an issue relevant to our disability determination, **we would also expect that our adjudicator would contact that source to resolve the inconsistency.**

(ECF No. 18 at 10) (citing *Gibson v. Berryhill*, No. 3:17-cv-0921, 2018 WL 777163, at *2-3 (S.D.W. Va. Feb. 8, 2018) (citation omitted) (emphasis in original)). "The ALJ is empowered to recontact a claimant's medical source." *Id*. (quoting 20 C.F.R. § 416.920b(b)(2)). Although, "it is true that an ALJ is no longer required to recontact a physician at the first sign of insufficiency in the evidence, the regulation indicates that the ALJ should still at least attempt to resolve insufficiencies in the evidence before making a determination or decision based on insufficient evidence." *Id*.; *see also Oakes v. Kijakazi*, 70 F.4th 207, 214 (4th Cir. 2023) ("Accordingly, when an administratively ordered consultative examiner's opinion contains what ought to be an easily clarified ambiguity on a key issue, it logically flows that an ALJ must engage in a simple § 404.1520b(b)(2) inquiry.").

In this case, Dr. Osai's opinions are ambiguous as it is difficult to ascertain whether the summary is a mere re-telling of Plaintiff's symptoms or Dr. Osai's medical findings. *See* (Tr. 438). The ALJ also does not explicitly discuss Dr. Osai's 'conclusions' and their impact on his analysis.

Dr. Osai's "conclusions' 'support' Plaintiff's testimony and insistence that he is unable to return and sustain his past work. *See* (Tr. 56) ("Alas I feel I would not be able to do 100% of what they used to think, ... I can't use my hands for that many hours in a day without just like a whole lot of debilitating pain."). However, based on the "permissive language of the regulations and the sufficiency of the record," which includes objective medical records (prior examinations and treatment notes detailing the condition of Plaintiff's hands) that span several years, the ALJ did not err by failing to recontact Dr. Osai. *See* (Tr. 577-603); *see Jarrells v. Barnhart*, 2005 WL 1000255 at *6 (W.D. Va. Apr. 26, 2005) (finding that the "Commissioner is not required to give treating medical sources a second opportunity to backfilan unsubstantiated disability opinion simply because the ALJ finds it to be unsupported. To do so, in effect, would be tantamount to shifting the burden to the Commissioner to prove non-disability.").

**V. Conclusion**

In sum, the Court agrees with Commissioner that the ALJ adequately explained Plaintiff's RFC determination. In other words, the ALJ's RFC determination for Plaintiff is supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge